UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------
In Re:                                                              Chapter 7

    **ALEVTINA DICK,**                            Case No. 11-41682 (NHL)

                    Debtor.
-----------------------------------------------------------

## RESPONSE TO DEBTOR'S LETTER OF OCTOBER 23, 2013

    1.    On March 3, 2011, Alevtina Dick, the debtor (the "Debtor"), filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

    2.    Pursuant to the United States Trustee's Notice of Appointment of Interim Trustee and Trustee, on or about March 3, 2011, Robert L. Geltzer was appointed trustee (the "Trustee") for the estate of the above-captioned Debtor and is now qualified and acting as such Trustee.

    This is written is response to Debtor's letter of October 23, 2013,[1] which was filed with this Court notwithstanding the fact that no matter was pending before this Court.

---

[1] On or about November 22, 2013, Debtor's husband, Leslie Dick, also filed a letter with this Court alleging virtually the same unfounded complaints that have no legal bases and thus, I submit this response to his letter, as well, and deny any and all unfounded, improperly, and untrue allegations contained therein I do, however, invite the Court's attention to page 3, paragraph 7 of his letter which states:

> On <u>October 15, 2013</u> and <u>November 5, 2013</u> an Affirmation in Opposition was filed by my Former Law Firm Schwartz, Goldstone and Campisi. Attached hereto and incorporated by reference is the Affirmation in Opposition dated November 5th and November 15, 2013 as **EXHIBIT 4** (which are identical but with both the original Case Number and the new Case number which was filed with a new index No. 156478/13 with a new fee paid to get my file transferred to my new Attorneys Dinkes and Schwartzer).

It is significant to note that, if Mr. Dick is truthful and correct, it suggests that the Dinkes & Schwitzer firm may have knowingly and wilfully attempted to circumvent this Court's jurisdiction over the Debtor's interest in the pre-petition personal injury action.

3.    The Debtor disclosed the existence of the pre-petition personal injury action in response to question 35 on her Schedule B; -- but no citation or other required information was included on her Schedule C; she also included it in response to question 3 of her Statement of Financial Affairs.

## THE PRE-PETITION PERSONAL INJURY ACTION

## 2009-2011

4.    According to the December 30, 2009 Verified Bill of Particulars filed by Richard Mandel, Esq., former attorney for the Debtor and her husband, Leslie Dick, they were involved in an automobile accident on May 16, 2009 -- prior to the filing of the Debtor's petition on March 3, 2011.  On or about April 30, 2010, the law firm of Schwartz Goldstone & Campisi, LLP was substituted as the attorney for Debtor and her husband.

5.    Based upon the information provided by the Debtor, I wrote to Richard Mandel, Esq. on April 15, 2011 inquiring as to the personal injury action, to which he responded on April 20, 2011 that his firm did not represent the Debtor and Mr. Dick any longer and that they were represented by Schwartz Goldstone & Campisi, LLP, to whom I wrote on April 22, 2011.

6.    When I received no response, I wrote again on July 12, 2011 to which I received a response on August 9, 2011 together with copy of the retainer agreement.  Whereupon, I wrote to Mr. Campisi on August 31, 2011 stating that his letter of August 9, 2011 did not sufficiently respond to mine of April 22, 2011 which inquired as to the details of the liability, the damages, the anticipated recovery, etc., of the personal injury action.  Whereupon, I received a telephone call from Mr. Schwartz, Mr. Campisi's partner, stating that they did not receive my letter of August 9, 2011 which

I again sent to him by fax on September 1, 2011. They responded on September 9, 2011 setting forth the existence of certain liens but, again, still insufficiently responding to my inquiry as to their estimate of the ultimate worth of the case. I received no response and wrote again on December 19, 2011.

## **2012**

7. I wrote on January 13, 2012 to which I received the January 19, 2012 letter advising of a status conference to be held on April 11, 2012, but, still, no response as to an estimate of the worth of the cause of action.

8. I wrote to Mr. Campisi on May 3, 2012 inquiring as to what has transpired at the conference that was previously stated to take place on April 11, 2012. I received no answer and wrote again on May 3, 2012 and June 18, 2012, to which I received a response on June 25, 2012 stating that the conference had been adjourned to August 29, 2012. Whereupon on September 17, 2012, I wrote inquiring as to what had transpired at that scheduled conference, but again received no response and, thus, wrote again on September 18, 2012. Having still received no response, on September 20, 2012, I again inquired and stated that if I did not receive a response, I might have to move for the turnover of the file. I wrote again on November 8, 2012, to which I received a response -- not from him -- but by telephone from Mr. Campisi on November 26, 2012. On December 11, 2012, in response to my December 10, 2012 letter to him, he advised that his office had been adversely effected by Hurricane Sandy, and that the trial date had not as yet been set.

## **2013**

9. I wrote to him on January 15, 2013 expressing my regrets as to the status of his office, but pointing out that his firm could take no action without bankruptcy

3

Court retention, which I was still willing to seek provided that I finally got a thorough and complete response to my April 22, 2011 letter. Interestingly, it does seem that Mr. Campisi and his firm again became involved in the pre-petition personal injury action.

10. On January 15, 2013, I received a letter from Mr. Campisi as to the derivative nature of the Debtor's involvement in the pre-petition personal injury action which, indeed, might or might not warrant pursuing the action because there might not be a sufficient distribution to creditors; however, the point made in Mr. Campisi's letter as to its value being less than any entitled exemption (while perhaps true) was not germane inasmuch as no exemption was claimed and, moreover, no exemption would attach to a recovery from a derivative claim.

11. On April 18, 2013, I again inquired as to the status of the case and was advised on April 22, 2013 that it had been sent for non-binding mediation on May 16, 2013, about which I inquired on June 11, 2013 but, again, with no response, resulting in my June 27, 2013 demand for a turnover of the file. Whereupon I received a response on July 1, 2013 that the mediation had not occurred but that Mr. Campisi wanted me to contact him as soon as possible to discuss the derivative claim. On August 20, 2013, I inquired as to any developments since his July 1, 2013 letter, but received no response, whereupon I wrote again on September 9, 2013, and have yet to receive a response, notwithstanding the fact that Mr. Campisi continues to hold himself out as the attorney in connection with the personal injury action. Thus, I again demanded a turnover of the file on September 20, 2013. Whereupon on September 23, 2013, I received a response from Mr. Campisi that the firm of Dinkes & Schwitzer ("Dinkes") had been substituted for Mr. Campisi's firm and that the Dinkes was under the misapprehension that it did not need to be retained by me. Thus, on September 25,

2013, I wrote to William Hamel of the Dinkes firm in an attempt to enlighten him, and I invite the Court's attention to the last paragraph of that letter, annexed hereto and marked as Exhibit "A", in which I stated my preference to retain his firm provided, of course, that it complied with the requirements imposed by the Office of the United States Trustee and the Bankruptcy Court in connection with personal injury attorneys' retentions. I received no response from Mr. Hamel to whom I wrote again on October 19, 2013.

12. Subsequent thereto, I was telephoned by the law secretary to New York State Supreme Court Justice Manuel J. Mendez; whereupon, I was requested to, and did explain the entire situation at which time, I believe, various counsel were present. My explanation resulted in Justice Mendez's November 6, 2013 order to turn over the file to me, a copy of which Order was transmitted to me by the November 13, 2013 letter from William Hamel, copies of which are annexed and marked as Exhibit "B." I responded to his letter pertaining to the terms of the order and directing that the personal injury file be turned over to my intended special personal injury counsel for the purpose, at this time, of evaluating the Debtor's derivative claim.

## THE 2004 ORDER

13. On or about December 29, 2011, I applied for an order pursuant to Federal Rule of Bankruptcy Procedure 2004 for production of documents by, and the examination, of the Debtor, in connection with her apparent operation of a business called Leslie Worldwide Ltd., and payments to Rock Le Triomphe Associates. The application was opposed, but the motion was granted by Order of February 7, 2012 (the "2004 Order").

14. On February 13, 2012, the Debtor's attorney, Natalia Skvortsova, Esq., moved for an order to withdraw, which this Court granted on or about March 21, 2012 notwithstanding Debtor's response to said motion.

15. In response to Debtor's February 21, 2012 letter of complaint and request for an adjournment of the examination required pursuant to the 2004 Order, I wrote to her on March 1, 2012, but with an abundance of caution also copied her attorney inasmuch as the order for that attorney to withdraw had not as yet been signed.

16. On April 24, 2012, this Court issued a Proceeding Memorandum/ Order in consideration of Debtor's April 12, 2012 letter to the Court.

17. On April 26, 2012, I again wrote to the Debtor to reschedule the examination pursuant to the 2004 Order to June 18, 2012, which letter also corrected the erroneous statements made by the Debtor; a copy of which letter is annexed hereto as Exhibit "C".

## **THE DEBTOR'S UNFOUNDED COMPLAINTS**

18. Now comes the Debtor's October 23, 2013 letter. First, as to her unfounded and irrational complaints with respect to the 2004 Order that I obtained. Upon the receipt of very few documents received and their examination by me my Court-appointed accountant, I, in my legal and business judgments, determined that there were no actions to pursue against the Debtor or others (except the derivative portion of the personal injury action) that would result in any distribution to creditors. Thus, the Debtor's examination never was taken and, moreover, I never did anything to delay or derail or deny the Debtor's discharge, which she received on June 14, 2011, only slightly more than three months after she filed.

19. As to her complaints with respect to the pre-petition personal injury action, and taking certain exception with the way Mr. Campisi conducted that action (which, as the Court will recognize, he has no authority to do, never having been retained by me or this Court), they do not come as a surprise to me as evidenced by the plethora of correspondence set out above trying to elicit information from him so as to retain him.

20. Nevertheless, unless and until I can determine whether the Debtor's derivative claim has any value to the estate, I might be considered negligent in abandoning it prematurely. If Mr. Campisi wishes to "drop my [her] claim" because of alleged harassment by me, he would, indeed, have a very strange personal injury action to pursue on behalf of solely Debtor's husband which, of course, is not estate property; but, in that event, apart from any practical economic benefit, there would be nothing to stop me from seeking to retain, with this Court's permission, personal injury counsel to prosecute or, at least, monitor that derivative action.

## **CONCLUSION**

Indeed, I would welcome this Court requiring the appearance of the Debtor, Mr. Campisi, Mr. Dinkes, Mr. Hamel, and all others so that they can become enlightened as to the interplay between the filing of a bankruptcy petition and the existence of a pre-petition personal injury action, about which I have lectured to various Justices of the Supreme Court for the counties of New York, Bronx, and Brooklyn, in years past.

That having been said, and apart from the fact that no proper motion for sanctions has been made, and, indeed, that none can be made inasmuch as there is

nothing either in fact or in law to sanction me, I respectfully request this Court's finding to that effect.

Dated:  November 26, 2013
    New York, New York

                                    Respectfully submitted,

                                    The Law Offices of
                                    ROBERT L. GELTZER
                                    Counsel to the Trustee
                                    ROBERT L. GELTZER, ESQ., as
                                    Trustee for Alevtina Dick
                                    1556 Third Avenue
                                    New York, New York  10128
                                    (212) 410-0100

                                    /s/ Robert L. Geltzer
                                    ROBERT L. GELTZER